BLACK *v.* HERBERT.

1. CONTRACTS—SALE OF MONUMENT—DELIVERY.

  A monument sold, "to be delivered and set up" in a speci-
  fied cemetery, is not delivered, so as to give the purchaser the
  right of rejection because of defects therein, until its erection
  at the place where it is designed to be used, and its tender to
  the purchaser as complete.

2. SAME—INCIDENTAL VARIANCE—RIGHT OF REJECTION.

  The purchaser under a contract for the sale of an expen-
  sive monument and several inexpensive markers cannot ex-
  ercise the right of rejection as to the entire contract merely
  because the markers furnished are not of the specified size,
  where the seller promptly supplies their place with others of
  the size required.

Error to Allegan; Padgham, J. Submitted January
12, 1897. Decided February 18, 1897.

*Assumpsit* by Asbury Black and another against Henry
Herbert for the contract price of a monument. From a
judgment for plaintiffs, defendant brings error. Affirmed.

*C. R. Wilkes*, for appellant.

*Philip T. Colgrove*, for appellees.

GRANT, J. On December 4, 1894, plaintiffs made a
written contract with the defendant by which they agreed
to furnish him "one monument after design Henika,
of gray granite [giving the dimensions and inscriptions];
also three granite markers; the said monument to be
delivered and set up in the E. Martin Cemetery, on or
before May 15, 1895, or as soon thereafter as possible, in a
good and workmanlike manner." The price was $175.
The other terms of the agreement are immaterial. De-
fendant, soon after its execution, requested some changes,

which were agreed upon. Plaintiffs claimed that they had delivered and completed the monument in accordance with the terms of the contract. Defendant claimed that they had not, and refused to accept or pay for it. Plaintiffs brought suit to recover. The parties gave testimony tending to support their respective claims. The jury, under the order of the court, went to the cemetery, and viewed the monument. Verdict and judgment were for the plaintiffs.

. Three facts are settled by the verdict against the defendant: (1) That the monument was in compliance with the contract; (2) that it was constructed and delivered as soon as possible; (3) that the defendant waived a cap of a different design than the one called for by the contract.

The first and principal question in the case is: Had the defendant the right to reject the monument after it was placed in the cemetery, but before it was erected, on the ground of certain defects? To state the question conversely: Had the plaintiffs the right to remedy defects before tender and formal delivery? Plaintiffs sublet the contract to one Fox, in Concord, N. H., who made the monument and shipped it. On its arrival, plaintiffs sent their agent to put it in place. Before this was done, and on June 4th, defendant went to the cemetery, and, upon seeing the monument, stated to the agent that it was not what the contract called for. The agent admitted that there were defects in it, and that defendant was not obliged to accept it in its then condition, but informed him that the defects could be remedied. June 13th, defendant wrote plaintiffs as follows: "I have suffered all the vexations and unnecessary delay and blunders I am willing to bear in regard to that monument; so you may consider our contract void, and I wish you would remove the same at once from our lot." July 14th, defendant, in response to a letter from plaintiffs, met their workman, a Mr. Walker, in the cemetery. They discussed the question of remedying the defects, but defendant testified that he declined to give any directions

about it.   On the next day, Mr. Eldred, plaintiffs' agent, saw defendant, and said to him, "Mr. Walker tells me you would not let him fix the monument," to which defendant replied, "I did not hinder him from fixing it, but I told him I would not direct him."   July 22d, Mr. Black, one of the plaintiffs, met defendant, by agreement, in the cemetery.   Mr. Eldred also was present. , Defendant objected to Mr. Eldred's presence, and declined to stay there, and talk the matter over, unless Eldred went away.   Black replied that he did not care whether he (defendant) stayed or not, but that he (Black) could measure it, and find what was wanted.   No conversation after this occurred.   Several letters passed between them, but we do not consider them material.   We will assume that there was evidence to show that defendant, upon first seeing the monument, informed plaintiffs that he would not accept it.   The markers were too short, were returned to Mr. Fox, and others of the agreed length furnished.   Defendant stated that both he and his wife liked the cap as well as or better than the one specified by the contract; that he found no fault with the cap as far as the design was concerned; and that the only question was as to the workmanship.   Plaintiffs gave evidence tending to show that the defects in the monument could be, and were, remedied, by a few hours' work.

Defendant insists that this case is ruled by *American White Bronze Co.* v. *Gillette*, 88 Mich. 231.   He insists that the delivery was made the moment that the monument was taken to the cemetery.   Plaintiffs insist that the delivery was not made until the monument was in place, and that they had the right to remedy any defects before delivering and tendering it as complete.   The *Gillette Case* is clearly distinguishable from this, in that a material part of the inscription had in that case been omitted.   It could not be changed except by making an entirely new monument.   The first one had been delivered and tendered as complete.   Mr. Gillette promptly notified the plaintiff that he refused to accept the monument,

and that he rescinded and revoked its order, and declined to accept any other proposition. The company removed the monument, cast and put in place a second, which also was defective. They removed this, and put up a third, for which they brought suit. Had the first monument been of granite, and that part of the inscription omitted could have been chiseled in so as to comply with the contract, the case would have been like this. As the court said to the jury in this case, the monument could have been made anywhere, and rough blocks of granite could have been taken to the cemetery, and the monument there completed. It is not good law nor good sense that a party, under such circumstances, could not remedy a defect, and thus complete his contract. The plaintiffs did not make a formal tender and delivery until they had made the monument so as to comply with the contract. Had they delivered it without remedying the defects, and without producing markers of the length required, there could, of course, be no recovery. If, when the defendant saw the monument as the plaintiffs were putting it in place, he had absolutely refused to accept it when the defects were remedied, he would still be liable. The fact that the markers were not of the length required did not prevent the plaintiffs from supplying their place with others of the proper length. The monument was the principal thing. If A. contracts to build a house and fence for B. within a specified time, and the house is completed, but the fence posts are not of the length contracted for, can B. reject the entire contract if A. is willing to, and does, provide other posts and complete the fence? The difficulty with the defendant's position is in assuming that there was a delivery when the monument was deposited upon the ground in the cemetery, whereas, in fact, there was no delivery, and could not be, until the monument was set in place. Until this was done, it was under the control of the plaintiffs, and subject to any changes which could be made so as to complete it according to contract.

Having determined that the monument was in compliance with the contract, the only other questions were whether the plaintiffs had completed it within the time prescribed, and whether there was a waiver of the particular cap. We think there was evidence to support all the points upon which the case was left to the jury, and that there was no error in the charge.

The judgment is affirmed.

The other Justices concurred.